FILED & JUDGMENT ENTERED
Steven T. Salata

Mar 06 2013

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### (Charlotte Division)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 7** |
| **DANIEL ROSELLI,** | ) | **Case No. 12-32461** |
| | ) | |
| Alleged Debtor. | ) | |
| | ) | |

## FINDINGS AND CONCLUSIONS SUPPORTING ORDER OF DISMISSAL
## ENTERED FEBRUARY 11, 2013

**THIS MATTER** came before the Court on Daniel Roselli's ("Roselli") Answer to Bridgetree's Involuntary Petition, Motions to Dismiss, and Counterclaims. A trial was held on December 4, 2012, December 14, 2012, and February 7, 2013. Glenn Thompson and J. Douglas Grimes appeared on behalf of the petitioning creditor, Bridgetree, and Joseph Grier appeared on behalf of Roselli.

At a hearing on February 11, 2013, this Court announced its conclusion that the jurisdictional predicate to a single petitioning creditor filing an involuntary petition under 11 U.S.C. §303 is not met and entered an order of dismissal the same day. This written decision, the primary aspects of which were announced on the record on February 11, 2013, supports the order of dismissal entered on February 11, 2013.

## PROCEDURAL HISTORY AND BACKGROUND

On May 18, 2010, Bridgetree filed a complaint (the "District Court Action") in the United States District Court for the Western District of North Carolina (the "District Court") against Redf Marketing, LLC ("Redf") Target Point, Roselli, Teng Li ("Li"), and Mark Epperly ("Epperly") (collectively, the "Defendants"), for trade secret misappropriation, conversion, and unfair and deceptive trade practices involving Bridgetree's and Redf's operations in the United States and China.

Bridgetree markets itself as a company with core services in data production and analytics, web development, and logistics. Redf is a full service marketing agency with advertising experience in television, print, radio, out of home, online marketing (e.g., search engine optimization, search engine marketing, and other forms of digital marketing), public relations, events, marketing analytics, and web development. Roselli is the President and a co-owner of Redf. Roselli's spouse is the other owner of Redf.

The District Court Action arose from the departure of Teng Li, Bridgetree's former Vice President of Technology and Security, to Redf. Redf subsequently began offering services in direct competition with Bridgetree.

On August 10, 2012, after a two-week jury trial on several claims asserted in the District Court Action, the jury returned a verdict in Bridgetree's favor on its claim for misappropriation of trade secrets under N.C. Gen. Stat. §66-152 *et seq*., among other things.[1] The jury found that Bridgetree's compilation of scraper source code, compilation of pre-mover source code, source code compilations, and proprietary data compilation are trade secrets, and that Defendants, including Roselli personally,

---

[1] The jury also found in favor of Bridgetree on its UDTPA claim and common law conversion claim. In total, the jury ultimately awarded Bridgetree $4,155,793.00.

willfully and maliciously misappropriated these Trade Secrets. The jury awarded Bridgetree $653,292.00 in compensatory damages and $25,000.00 in punitive damages for trade secret misappropriation, totaling $678,292.00. On August 13, 2012, judgment was entered in accordance with the jury's verdict.

Subsequent to the entry of the District Court Judgment, Bridgetree, Roselli, and the other Defendants filed various post-trial motions.[2] As part of the post-trial motions, Roselli and the other Defendants made certain representations to the District Court indicating an inability to satisfy the judgments entered against them, an inability to afford to post a security bond, and an inability to continue operating without bankruptcy protection given the District Court Judgment.

Prior to the resolution of those motions,[3] on October 12, 2012, Bridgetree filed an involuntary bankruptcy petition against Redf, Target Point, and Roselli.[4] No other creditors joined in the involuntary petition. Thereafter, on October 19, 2012, the District Court, acting *sua sponte*, withdrew the reference as to the District Court Action for the purpose of resolving the post-trial motions and any appeal.

Roselli filed an Answer to the Involuntary Petition and Motion to Dismiss on November 8, 2012. He sought to have the petition dismissed arguing Bridgetree could not demonstrate that the statutory requirements of 11 U.S.C. §303(b) had been met. In

---

[2] Bridgetree's *Petition For Attorneys Fees* [Doc 209]; the defendants' *Motion To Stay Execution Of The Judgment Pending Post-Trial Motions Under Rule 62(B)* [Doc 215]; the defendants' *Motions For Judgment As A Matter Of Law And, In The Alternative, To Alter And Amend The Judgment Or For A New Trial* [Doc 217]; Bridgetree's *Motion To Amend The Judgment To Include Pre- And Post-Judgment Interest And Trebled Damages* [Doc 218]; and *Bridgetree's Motion For Permanent Injunction* [Doc 223]. The document numbers correspond to the numbering in the District Court Action, 3:10-cv-00228-FDW-DSC.
[3] The District Court entered its ruling on the post-trial motions on February 5, 2013.
[4] Redf consented to an order for relief and converted its case from chapter 7 to 11 in order to facilitate its ability to use cash collateral. The petition against Target Point is contested and is scheduled for further hearing.

particular, Rosseli asserted 1) he has more than twelve (12) qualifying creditors; 2)

Bridgetree's claim is subject to a bona fide dispute; 3) he is generally paying his debts as

they become due; and 4) Bridgetree brought the petition in bad faith.

## STANDARD OF REVIEW

The Bankruptcy Code permits involuntary petitions to be brought under 11 U.S.C.

§303.  Under §303(b), an involuntary case may be commenced as follows:

> **(b)** An involuntary case against a person is commenced by
> the filing with the bankruptcy court of a petition under
> chapter 7 or 11 of this title—
>> **(1)** by three or more entities, each of which is either a
>> holder of a claim against such person that is not
>> contingent as to liability or the subject of a bona fide
>> dispute as to liability or amount, or an indenture trustee
>> representing such a holder, if such noncontingent,
>> undisputed claims aggregate at least $14,425 more than
>> the value of any lien on property of the debtor securing
>> such claims held by the holders of such claims;
>> **(2)** if there are fewer than 12 such holders, excluding
>> any employee or insider of such person and any
>> transferee of a transfer that is voidable under section
>> 544, 545, 547, 548, 549, or 724(a) of this title, by one or
>> more of such holders that hold in the aggregate at least
>> $14,425 of such claims;

For simplicity, we will term such creditors as "qualifying creditors."

A further statutory requirement for maintaining an involuntary case is set forth

in 11 U.S.C. §303(h), which states that if an involuntary petition is timely

controverted, a court may enter an order for relief only if "the debtor is generally not

paying such debtor's debts as such debts become due unless such debts are the subject

of a bona fide dispute as to liability or amount[.]"

Accordingly, in order for Bridgetree to meet the requirements for filing an

involuntary petition, it must establish that 1) Roselli has less than twelve (12) qualifying creditors holding noncontingent, undisputed debts, 2) Roselli's obligation owed to Bridgetree is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, and 3) Roselli is not generally paying its debts as they become due.

## DISCUSSION

I. **Bridgetree is Ineligible to File an Involuntary Petition Against Roselli as the Sole Petitioning Creditor under §303(b)(2) because Roselli has More than Twelve (12) Qualifying Creditors.**

As Bridgetree filed this petition as a single petitioning creditor and no others have joined, it must proceed under 11 U.S.C. §303(b)(2). To maintain the petition, Bridgetree must establish that Roselli has fewer than twelve qualifying creditors who hold noncontingent, undisputed claims and are not employees, insiders of the debtor, or transferees of a voidable transfer from the debtor. *Atlas Mach. & Iron Works, Inc. v. Bethlehem Steel Corp.,* 986 F.2d 709, 715 (4th Cir. 1993) (citations omitted). The operative date for determining the number of qualifying creditors that the alleged debtor has is the petition date. *In re Moss,* 249 B.R. 411, 418-19 (Bankr. N.D. Tex. 2000).

In his Motion to Dismiss and Answer to the Involuntary Petition, Roselli asserts that the petition is inappropriate because he has more than twelve (12) qualifying creditors as contemplated by §303(b)(1). His initial Answer included a list of thirty-five (35) purported qualifying creditors. On Dec. 3, 2012, Roselli filed an amended list, reducing that number to twenty-nine (29). In the course of responding to discovery requests and preparing for the trial of this matter, Roselli's counsel removed a few

5

additional creditors. He asserted only twenty-five (25) qualifying creditors at the trial on December 3, 2012.[5]

### A.   The Trial on December 3, 2012

On the first trial date, Bridgetree conceded the following six creditors as qualifying creditors: 1) AT&T Mobility, 2) Sprint Wireless, 4) Bank of America MasterCard, 5) Carmel City Country Club, 5) Mecklenburg Area Catholic Schools, and the 6) City of Charlotte.

Roselli argued that St. Gabriel's Church, Nationwide Insurance, and Green Valley Lawn Maintenance ("Green Valley") should also be counted as qualifying creditors. Bridgetree disagreed, arguing that these were not legal debts. This Court agrees that St. Gabriel's Church should not be counted. While tithing may be a moral obligation, it is not a legal debt.

Nationwide is not a qualifying creditor because such insurance is paid in advance to cover future coverage.   At the time of the petition, Roselli owed no debt to Nationwide.

On the other hand, Green Valley is a legal debt. Roselli's agreement with Green Valley required equal monthly payments that covered lawn maintenance over the course of the entire year.   In this geographic area, more work and expense is required in September to maintain a lawn than any other month. Apart from routine grass cutting and lawn maintenance, September is the month for reseeding and fertilizing a lawn. No doubt, Green Valley provided more material and services for Roselli in September than were covered by the equalized monthly payments, resulting in a net liability at month's end.

---

[5] For a list of the twenty-five creditors, see Bridgetree's Supplemental Post-Hearing Memorandum of Law, December 12, 2012, ECF Doc. 33, p. 3.

Green Valley will make up that deficiency from payments in the winter months when less work and materials are required.  It is more likely than not that Roselli owed Green Valley a "debt" on the petition date.

The trial was continued and the Court requested additional briefing on the numerosity issue. In its supplemental brief, Bridgetree conceded that two additional creditors should be considered qualifying creditors: Fifth Third Bank and the Mecklenburg County Tax Collector.  Roselli also conceded in its supplemental brief that a single entity holding more than one claim should be treated as one creditor.[6]

On December 14, 2012, at the parties' request, this Court advised counsel of its current thinking on the numerosity issue. At that time, the evidence suggested ten (10) qualifying creditors. That number included two (2) creditors which Bridgetree conceded as qualifying creditors on December 4, 2012, but now recants. Given the fluidity of the situation, Bridgetree is released from its earlier concessions as to City of Charlotte and Mecklenburg Area Catholic Schools.[7]

### B.  The Trial on February 7, 2013

The trial resumed on February 7, 2013. Based on their additional discovery, the parties stipulated that the following eight (8) creditors should be counted as qualifying creditors: 1) All Star Pool Service, 2) Carmel City Country Club, 3) Sprint Wireless, 4) AT&T Mobility, 5) Mecklenburg County Tax Collector, 6) Fifth Third Bank, 7) Branch Banking & Trust, and 8) Green Valley.  Since the bar is twelve (12) qualifying creditors,

---

[6] At the hearing on December 4, 2012, Roselli asserted that Bank of America, N.A should count as four (4) creditors because it held four (4) separate claims against Roselli. Similarly, it asserted that Nationwide Insurance and Mecklenburg Area Catholic Schools should each count as two creditors since they both held two claims against Roselli.

[7] Since that initial trial date, the parties have conducted additional discovery and research and given this, it would be manifestly unfair to bind Bridgetree by those earlier concessions.

the existence of four (4) more qualifying creditors would invalidate the petition.

The continued trial focused on five issues relevant to whether any other creditors of Roselli are qualifying creditors: 1) whether Bridgetree's debt is subject to a bona-fide dispute, 2) whether a holder that is a transferee of a voidable transfer under 11 U.S.C. §549 counts as a qualifying creditor; 3) whether Anne Bradley, C.P.A. is an insider of Roselli and is disqualified as a qualifying creditor; 4) whether a claim based on a Guaranty Agreement is contingent as to liability, and 5) whether an entity and its affiliates should be counted separately for the purposes of 11 U.S.C. §303(b)(2).

### 1) Bridgetree's debt is not subject to a bona-fide dispute.

For reasons that will be discussed greater detail in Section II, *infra*, Bridgetree is a qualifying creditor because its debt is not subject to a bona fide dispute. This brings the number of qualifying creditors up to nine (9).

### 2) Creditors who receive a voidable transfer under §549 are not qualifying creditors under §303(b)(2).

As explained above, in determining whether a debtor has twelve (12) or more qualifying creditors, you do not count as a qualifying creditor, any person or entity who is also "a transferee of a transfer that is voidable under section . . . 549 . . . of this title." 11 U.S.C. §303. §549 provides that "[t]he Trustee may avoid a transfer of *property of the estate* (1) that occurs after the commencement of the case; and (2) that is authorized only under §303(f)."[8] (emphasis added).

Subsection (b) of §549 specifically references transfers in an involuntary case. It prohibits the avoidance of transfers during the gap period if the transfer is given for value

---

[8] §303(f) gives Roselli provisional permission to keep operating and using his property. §303(f) is thus an exception, pending entry of the order for relief, to the restrictions on Roselli's use of property in §363. However, §303(f) is quite explicitly not an exception to the voidability of a post-petition transfer.

received *after* the filing, but that exception does not apply, again explicitly, to "satisfaction … of a debt that arose *before* the commencement of the case." (emphasis added).

The case law is clear that a creditor who received a post-petition transfer from estate property should not be counted for §303 purposes, even if those payments are monthly, ordinary, personal expenses. *See In re Skye Marketing Corp.,* 11 B.R. 891, 896 (Bankr. E.D.N.Y. 1981) (declining to count creditors of pre-petition debts who were paid post petition). The Seventh Circuit explained that the "rationale for excluding certain creditors [who were paid post-petition] from the count is that they would be unlikely to join a petition." *In re Rassi*, 701 F.2d 627, 630 (7th Cir. 1983).

Seeking to include recurrent creditors in the count, Roselli argues that even if the transfers would be avoidable under §549(a), the transfers fall under the exception under §549(b). That subpart shields a post-petition transfer from avoidance "to the extent any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, is given after the commencement of the case in exchange for such transfer…." In *In re Pucci Shoes,* the Fourth Circuit held that whether a purported debtor received value in exchange for a gap-period transfer does not hinge on whether the value was provided before or simultaneous with the transfer as long as value is given *during the gap period.* 120 F.3d 38, 42 (4th Cir. 1997) (emphasis added).

This current case is distinguishable from *In re Pucci Shoes* because here, the value was provided prior to Bridgetree's filing of the involuntary petition and not in the gap period. In other words, these were post-petitions transfers in satisfaction of pre-petition debts.

Because Barclays US Airways MasterCard, the City of Charlotte, and Mecklenburg Area Catholic Schools received §549 transfers, they are not qualifying creditors.

### 3) §303(b)(2) excludes an insider of the putative debtor from being counted as a qualifying creditor.

Bridgetree maintains that Anne Bradley, a C.P.A. and accountant for both Redf and the Rosellis, is an insider of Roselli and is not a qualifying creditor. Roselli argues that Anne Bradley does not meet the definition of an insider under §101(31)(A) and should be counted. However, this statutory list is illustrative, not exclusive, and on the facts presented, Bridgetree has the better part of the argument.

Anne Bradley is an insider of Redf. Redf is an insider of the Rosellis. Anne Bradley is an officer and a member of Redf's management team.[9] Redf held her out to be the company's CFO, her e-mail signature stated she was its CFO, and her status as such was communicated to the media. Bradley signed checks and handled the finances of Redf. In that capacity, she worked closely with the Rosellis, the company's owners and co-executives. Anne Bradley is also the personal accountant for the Rosellis. Given these close relationships with the Rosellis and their business, Anne Bradley is an insider. She is not counted as a qualifying creditor.

### 4) Considering the facts and circumstances, claims based on Roselli's guaranty of his business debts are not contingent.

The question of whether a guaranty obligation is regarded as a contingent claim pursuant to §303(b) is determined by the text of the agreement. *In re Tikijan,* 76 B.R. 304, 316 (Bankr. S.D.N.Y. 1987). When the text of a guaranty provides that it is "an

---

[9] Roselli is a forty-nine percent (49%) owner of Redf and his wife is a fifty-one percent (51%) owner, making Redf an insider of Roselli.

absolute continuing guaranty," then the guaranteed obligation will not be regarded as contingent. *In re Hill,* 5 B.R. 79, 82 (Bankr. D. Minn. 1980). In *Bartmann v. Maverick Tube Corp.,* the Tenth Circuit held that a creditor holding a claim based on a guaranty had standing as a petitioning creditor because the guaranty agreement at issue unambiguously provided that the debtor's guaranty was continuing. 853 F.2d 1540, 1545 (10th Cir. 1988).

In this case, Roselli's guaranties of his business debts, including his guaranty of an American Express Business Card for Redf, his guaranty of a corporate credit card through Bank of America Visa, his guaranties of notes to Bank of America from Red Cedar and Redf, his guaranty of a Red Cedar credit card through BB&T Financial, and his guaranty of Red Cedar mortgage through Branch Banking and Trust are unconditional, continuing, and absolute obligations. Liability has been established. Roselli specifically waived any right to require the banks, or American Express, to make demands on the part of the primary obligor. Furthermore, regarding American Express, Roselli's name is listed on the account with that of Redf, suggesting that he is a co-obligor, not a guarantor.

Thus, American Express should be counted as a qualifying creditor, which brings the total to ten (10) qualifying creditors. The Bank of America and BB&T entities should also be counted; the question becomes, how many times?

### 5) An entity and its affiliates should be counted separately for purposes of 11 U.S.C. §303(b).

The Bankruptcy Code's definition of "entity" includes "person"; and "person" includes "corporation". 11 U.S.C. §§101(15), 101(41). The Code is silent whether, or

under what circumstances, the separate identity of a corporate creditor should be disregarded for §303(b)(1) purposes. Only a few cases have addressed the issue. Initially, this Court was inclined to treat the Bank of America entities as one single creditor due to the close nexus between the Bank and its credit card subsidiaries. However, after reviewing case law on this topic, it appears these entities should be treated separately.

Both the Fifth Circuit in *In re Sims*, and the Second Circuit in *In re Gibraltor Amusements,* determined that the separate corporate identities of the affiliated petitioning creditors were not to be lightly disregarded. 994 F.2d 210, 215-16 (5th Cir. 1993); 291 F.2d 22, 24 (2nd Cir. 1961). Even where there is "significant interrelatedness" between petitioning creditors, they are to be treated separately unless ordinary principles of corporation law dictate that they should be treated otherwise. *In re Sims* at 216-17.

Bank of America, N.A., will be treated separately from its credit card subsidiaries. Bank of America, N.A's claims are based on Roselli's guaranty of loans made to Redf and Red Cedar. As discussed above, these guaranties are not contingent. Adding Bank of America, N.A. brings the count to eleven (11) qualifying creditors.

Further, Bank of America Visa and Bank of America MasterCard will be treated separately from one another. The limited evidence presented is unclear as to whether these are two separate entities. Roselli's account statements provide little information about corporate identity. The post office boxes listed on account statements are only a few digits apart, suggesting that these entities employ lock boxes that are physically close to one another. Apart from this, the evidence is inconclusive. Bridgetree has not met its burden of showing that the two entities are but one. We will treat Bank of America Visa

and Bank of America MasterCard as separate qualifying creditors. This brings the count to thirteen (13) creditors.

Similarly, BB&T and Branch Banking and Trust will be treated separately. Branch Banking & Trust was included as a qualifying creditor in the parties' stipulation at the beginning of the trial on February 7, 2013.  Since BB&T Financial's debt is not contingent, it is a qualifying creditor. Including BB&T Financial, the count is up to fourteen (14) qualifying creditors.[10]

In sum, Roselli has more than twelve (12) qualifying creditors who hold noncontingent, undisputed claims and are not employees, insiders of the debtor, or transferees of a voidable transfer from the debtor. Bridgetree is ineligible to bring an involuntary petition against Roselli as a single petitioning creditor.

However, out of an abundance of caution we will address the parties' remaining arguments.


## II.      Bridgetree's Claim is not Subject to a "Bona Fide Dispute"

Roselli also seeks to have the petition dismissed under 11 U.S.C. §303(b) on the argument that Bridgetree's claim is subject to a bona fide dispute.  The purpose of the bona fide dispute provision is to "prevent creditors from using involuntary bankruptcy to coerce a debtor to satisfy a judgment" when such questions as to the liability of the debtor remain to be determined.  *In re Byrd*, 357 F.3d 433, 438 (4th Cir. 2004).

The term "bona fide" dispute is not defined in the Bankruptcy Code.  *Id.* at 437. The Fourth Circuit has adopted the formulation that a bona fide dispute exists when there

---

[10] Although BB&T Financial received a post-petition payment, because that payment did not come from property of the estate, it is not avoidable under §549.

is an "objective basis for either a factual or legal dispute as to the validity of [the] debt."
*Id.* (*citing Matter of Busick*, 831 F.2d 745, 750 (7th Cir. 1987)).

The petitioning creditor has the initial burden of establishing a prima facie case that no bona fide dispute exists as to the putative debtor's debts. *Id.* Once the petitioning creditor has made its prima facie case, the burden shifts to the debtor to present evidence of a bona fide dispute. *Id.* at 439. The role of the bankruptcy court is not to resolve the merits of the bona fide dispute, but simply determine whether one exists. *Id.* at 437. The operative date for determining whether Bridgetree's claim is subject to a bona fide dispute is the date it filed this involuntary petition, Oct. 12, 2012.

Applying the above stated principles, several factors demonstrate that there was no bona fide dispute as to Bridgetree's debt against Roselli as of October 12, 2012.

As of the petition date, Bridgetree held an unstayed judgment against Roselli in the amount of $678,292.00. This meets Bridgetree's burden of establishing a prima facie case that no bona fide dispute exists. Roselli argues that a bona fide dispute does exist because 1) the presence of an unstayed judgment is not dispositive of whether a bona fide dispute exists, 2) the parties had a variety of post-trial motions still pending[11] that could erase that judgment, and 3) since Judge Whitney withdrew the reference for the purpose of resolving those post-trial motions, it was reasonable to assume that he intended to do so.

While it is true that the presence of an unstayed judgment is not in itself dispositive of the question of a bona fide dispute, it is indicative that no dispute exists.

---

[11] Although the District Court recently entered its decision on February 5, 2013, overruling all of the Defendants' motions, this Court's determination of whether a bona fide dispute existed at the date of the petition was reached based on the December 4, 2012 record and without knowledge of the District Court's decision.

14

Here, Bridgetree had an unstayed judgment against Roselli for $678,292.00 as of the petition date. Earlier, the District Court had denied a first motion by the Defendants to stay the judgment pursuant under Rule 62(f). Defendants thereafter filed a second motion to stay the judgment pending the resolution of Defendant's post-trial motions, on August 30, 2012. Six weeks later, as of October 12, 2012, the District Court had not granted the second stay motion, suggesting that there was not enough evidence of a bona fide dispute to warrant a stay.

Second, Roselli argues that a bona fide dispute exists while post-trial motions are pending. However, the Fourth Circuit has held that the mere fact that judgment is pending appeal does not mean that a bona fide dispute exists. *In re Byrd*, 357 F.3d at 438. In this case, Bridgetree's debt was reduced to a judgment after two years of litigation and a two week long jury trial. The fact that the District Court allowed the case to go to the jury and that twelve members of a jury determined that Bridgetree was entitled to a judgment against the Defendants goes a long way in establishing that no bona fide dispute exists. Furthermore, much of the Defendant's post-trial motions (on which Roselli's bona fide dispute argument is founded) were themselves a rehash of arguments previously raised and rejected by the District Court in that litigation.

Third, Roselli argues that the District Court's decision to withdraw the reference for the purpose of resolving post-trial motions and any appeal is strong evidence that a bona fide dispute exists. This Court disagrees. Judge Whitney's decision to withdraw the reference is no more indicative of a bona fide dispute than of a concern that Bridgetree's judgment be finalized for the purposes of judicial economy.[12] In his order withdrawing

---

[12] Since this decision will be reviewed on appeal by the same judge that tried the case, any error of apprehension by this bankruptcy court can be easily corrected.

the reference, Judge Whitney stated that "the finality of the jury verdicts—and thus the

debts—remains outstanding." Order, ECF No. 8. Judge Whitney also stated that he

withdrew the reference because it would be "substantially more efficient for the parties

and would promote judicial economy." *Id.*

Finally, after reading the parties' post-trial motions, it appeared at worst that

Bridgetree would have an undisputed claim for at least $14,425 after resolution of those

motions. In 2005, Congress added language to §303(b) noting that the bona fide

dispute may be with respect "to liability or amount." Courts interpreting the post-2005

amendments to §303(b) disagree on the issue of whether a dispute with respect to

any portion of the claim, even if an amount above $14,425 is left undisputed,

disqualifies the entire claim for §303(b) purposes. *Compare In re Demirco Holdings

Inc.,* 2006 Bankr. LEXIS 1131, at *8 (Bankr. C.D. Ill. June 9, 2006) (holding that a bona

fide dispute regarding a portion of a creditor's claim only disqualifies a creditor if it has

the potential to reduce the total amount of petitioning claims below the statutory

threshold) with *In re Rosenberg*, 414 B.R. 826, 846 (Bankr. S.D. Fla. 2009) (holding that

any dispute as to any amount renders the claim subject to a bona fide dispute).

This is a question of first impression in this judicial district. One bankruptcy

court within the Fourth Circuit has taken the position that as long as the creditor has an

undisputed claim above the statutory minimum it qualifies as a petitioning creditor. *See

In re Mt. Country Partners* 2012 Bankr. LEXIS 2876, at *9 (Bankr. S.D. W.Va. June 25,

2012).

This Court adopts the same position as our sister court. Based on a review of the

District Court docket, it seemed highly unlikely that the District Court would completely

overturn the jury verdict and wipe out Bridgetree's entire judgment to an amount less than $14,425 on the facts presented.

Based on these facts, this Court concluded that a bona fide dispute as to Bridgetree's claim did not exist as of the date of the petition. Since then, the District Court entered its February 5, 2013 order.  The District Court denied all of the Defendants' post-trial motions, upheld the judgment against the Defendants entirely, and granted Plaintiff's request for a permanent injunction. Furthermore, the District Court increased the judgment against the Defendants by adding pre and post judgment interest and partial attorneys fees.  The District Court's recent well-written and well-reasoned order is further confirmation of the jury's finding and the conclusion that no bona fide dispute exists as to Bridgetree's debt.

### III.    Roselli is not Generally Paying his Debts as They Become Due.

Once a creditor meets the jurisdictional requirements of §303(b) it also bears the burden of showing that a debtor is not "generally paying its debts as such debts become due" under §303(h). *In re Tucker*, 2010 WL 4823917, at *10 (Bankr. N.D.W.Va. Nov. 22, 2010). The operative date for determining that question is the date of the filing of the involuntary petition. *Id.*

Courts addressing the issue of whether an involuntary debtor is paying its debts as they come due have utilized varying tests.  *In re Caucus Distribs.*, 106 B.R. 890, 918 (Bankr. E.D. Va. 1989).   The following five factors provide, as a starting point, a 'mechanical test' for determining whether a debtor is generally not paying his debts as they come due:

> [1] The timeliness of payments on past due obligations;
> [2] The amount of debts long overdue;
> [3] The length of time during which the debtor has been
> unable to meet large debts;
> [4] Any reduction in debtor's assets; and
> [5] The debtor's deficit [financial] situation."

*In re Tucker*, at \*10 (*citing In re Knoth*, 168 B.R. 311, 316 (Bankr. D.S.C. 1994)).

Although offering guidance, the mechanical test must be employed with regard to the unique circumstances attendant to a particular proceeding. *Id.* Accordingly, there is some flexibility in the §303(h)(1) standard, such that courts require more than a showing that the debtor has a few unpaid debts. *Id.*

On the other hand, "there is substantial authority for the proposition that even though an alleged debtor may owe only one debt, or very few debts, an order for relief may be granted where such debt or debts are sufficiently substantial to establish the generality of the alleged debtor's default." *Crown Heights Jewish Cmt. Council, Inc. v. Fischer (In re Fischer)*, 202 B.R. 341, 350-51 (Bankr. E.D.N.Y. 1996). "An alleged debtor may not be paying its debts as they become due, even if the alleged debtor is not paying only one or two creditors, when those creditors hold the overwhelming majority of debt." *In re Am. Cotton Suppliers, Int'l, Inc*, 2002 Bankr. LEXIS 1972, at \*67-68 (Bankr. N.D. Tex. Sept. 30, 2002).

This last rule covers the present situation. Although Roselli is paying his ordinary living expenses, meaning most of his debts by number, he is not paying Bridgetree's unstayed $678,292.00 judgment. Since this debt dwarfs Roselli's other obligations, Roselli is not generally paying his debts as they become due.

18

IV.    **Bridgetree Did Not File the Involuntary Petition in Bad Faith.**

As a final defense, Roselli argues that Bridgetree brought this involuntary case in bad faith. He suggests (1) Bridgetree failed to conduct an adequate investigation as to the number of Roselli's creditors before filing the Involuntary Petition; (2) Bridgetree did not file the Involuntary Petition for the purpose of accomplishing the goals of bankruptcy; and (3) Bridgetree did not avail itself of the traditional methods of collecting on a judgment before filing the Involuntary Petition.

In determining whether an involuntary petition is brought in bad faith, the Fourth Circuit instructs bankruptcy courts to consider both objective factors and the subjective motivation of the petitioning creditor. *Atlas Mach. & Iron Works, Inc. v. Bethlehem Steel Corp.,* 986 F.2d 709, 716 (4th Cir. 1993) (*citing Caucus Distrib.,* 106 B.R. at 924.)  No single factor is determinative; rather courts must consider the totality of the circumstances.  *In re Tucker*, 2010 WL 4823917, at *12 (Bankr. N.D.W.Va. Nov. 22, 2010).  Furthermore, "[a] filing is presumed to be in good faith, and the existence of bad faith must be proven by the debtor by a preponderance of the evidence." *Id.* (*citing In re United States Optical, Inc.,* 1993 U.S. App. LEXIS 6960, at *10 (4th Cir. Apr. 1, 1993)).

The objective test is based on whether a reasonable creditor would have filed the involuntary petition.  *Id.* at *11.  A sole petitioning creditor that files an involuntary petition knowing that the alleged debtor has more than twelve qualifying creditors, or that fails to take reasonable steps to determine how many creditors the alleged debtor has, or that does not investigate whether the alleged debtor is paying his debts as they become due, shows objective bad faith. *See Caucus Distrib.,* 106 B.R. at 908; *In re*

*Tichy Elec. Co., Inc.,* 332 B.R. 364, 371 (Bankr. N.D. Iowa 2005). Although good faith will be presumed, a sole petitioning creditor must satisfy itself before filing an involuntary petition that it is eligible to do so, particularly when the alleged debtor's financial affairs are consistent with the existence of more than twelve creditors. *In re Stewart,* 2008 WL 4526130, at *10 (Bankr. E.D.Va. Sept. 30, 2008).

Although subjective bad faith cannot be proven directly, it can be inferred from the petitioning creditor's actions. *Stewart,* 2008 WL 4526130 at *13. Because the "power of an involuntary petition must be exercised for the good of the entire creditor body and for legitimate bankruptcy purposes," subjective bad faith is at play when the petitioning creditor files an involuntary case for the improper purpose of collecting on a debt or protecting its own interests. *Tichy Elec.,* 332 B.R. at 376-77. Debt collection is not a proper purpose for bankruptcy.

Neither the objective nor subjective tests are met in this situation. Obviously, this case involves two aggressive litigants. There appears to be bad blood between Beck, Bridgetree's CEO, and Roselli. However, this animosity does not appear to be the reason the involuntary petition was filed. Bridgetree's decision to file the involuntary bankruptcy was based on its attorneys' review of financial information and post-trial representations of Roselli and the other Defendants. At that time, the District Court sealed those filings to "attorneys eyes only." Beck was not even privy to the disclosures Roselli made in post-trial filings. He was in the dark.

Bridgetree's counsel recommended the filing of the involuntary petition based on a financial picture that showed questionable transactions and transfers and the Defendants incurring new liabilities, which were not originally disclosed. The Fourth

Circuit has held that "[t]he Bankruptcy Code does not require that a debtor's assets be dissipated while frivolous or hopeless appeals wind their way through the courts." *Byrd*, 357 F.3d at 440. Fear of this dissipation is what motivated the filing of the involuntary petition.

As to numerosity and filing as a single petitioning creditor, the discussion made in Section I demonstrates how the determination of the number of creditors owed money by Roselli was anything but obvious. Bridgetree cannot be faulted for filing the petition.

Bridgetree's decision to file the involuntary petition was not made in bad faith.

## **CONCLUSION**

For all of the reasons stated on the record, the involuntary petition should be **DISMISSED.**

This Order has been signed electronically.      United States Bankruptcy Court
The judge's signature and the court's seal
appear at the top of the Order.